UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICCOLOPAOLO G., | Case No.: 24-cv-00566-AGS-JLB |
| Plaintiff, | |
| | **REPORT AND RECOMMENDATION RE: PLAINTIFF'S MERITS BRIEF** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1] | |
| Defendant. | **[ECF No. 9]** |

This Report and Recommendation is submitted to the Honorable Andrew G. Schopler, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.3 of the United States District Court for the Southern District of California.

///

---

[1]     Carolyn W. Colvin became the Commissioner of Social Security on November 30, 2024.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn Colvin should be substituted for Martin O'Malley as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

On March 25, 2024, plaintiff Niccolopaolo G. ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security (the "Commissioner") denying his applications for disability insurance benefits and supplemental security income benefits ("SSI").  (ECF No. 1.)

Now pending before the Court and ready for decision is Plaintiff's merits brief. (ECF No. 9.)  The Commissioner filed an opposition (ECF No. 10), and Plaintiff filed a reply (ECF No. 11).  For the reasons set forth herein, the Court **RECOMMENDS** that Plaintiff's merits brief be **DENIED**, and that judgment be entered affirming the decision of the Commissioner.

## I.    PROCEDURAL BACKGROUND

On September 6, 2018, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning August 15, 2018. (Certified Administrative Record ["AR"] 96, 356–63.)  The claim was denied initially on November 30, 2018, and upon reconsideration on February 22, 2019.  (AR 96, 168–72, 178–83.)  A telephonic hearing was held before an administrative law judge ("ALJ"), Andrew Verne, on May 27, 2021.  (AR 96.)  On August 3, 2021, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 15, 2018, through the date of his decision.  (AR 93–108.)

On December 27, 2021, Plaintiff filed an application for SSI under Title XVI of the Social Security Act, alleging disability beginning January 10, 2021.  (AR 372–77.)  On December 28, 2021, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning January 10, 2021.  (AR 378–84.)  After his applications were denied initially and upon reconsideration (AR 262– 66, 274–86), Plaintiff requested an administrative hearing before an ALJ (AR 287–88).  An administrative hearing was held on March 2, 2023, before ALJ Kathryn Preston.  (AR 35– 71.)  Plaintiff appeared at the hearing with counsel, and testimony was taken from him, as well as from a vocational expert ("VE").  (AR 35–71.)  During the hearing, Plaintiff

amended his alleged onset date to August 6, 2021,[2] which is after the prior decision and corresponds with renewed treatment.  (AR 21, 43.)

As reflected in her May 30, 2023, hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 6, 2021, through the date of decision.  (AR 18–34.)  The ALJ's decision became the final decision of the Commissioner on January 25, 2024, when the Appeals Council denied Plaintiff's request for review.  (AR 1–6.)  This timely civil action followed.

## II.    SUMMARY OF THE ALJ'S FINDINGS

In rendering her decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 6, 2021, the amended alleged onset date.  (AR 24.)

At step two, the ALJ found that Plaintiff had the following severe impairments: ulcerative colitis and proctitis.  (AR 24.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (AR 25.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform a range of light work," as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> [T]he claimant is able to lift up to 20 pounds occasionally and lift/carry up to 10 pounds frequently.  He is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks.  He is unable to climb ladders/ropes/scaffolds, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl.  He is unable to tolerate exposure to unprotected heights and use of dangerous moving machinery.

---

[2]    The extent to which Plaintiff amended his alleged onset date is at issue and is addressed below.

Due to his symptoms, he would require two extra five-minute bathroom breaks daily, in addition to regularly scheduled breaks.

(AR 25.)

For purposes of her step four determination, the ALJ determined that Plaintiff is capable of performing past relevant work as a pharmacy technician, salesclerk, and cashier/checker.  (AR 28.)  The ALJ further determined that this work does not require the performance of work-related activities precluded by Plaintiff's RFC.    (AR 28.)  Accordingly, at step four, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from August 6, 2021, the amended alleged onset date, through the date of decision.  (AR 28–29.)

## III.   PLAINTIFF'S CLAIMS OF ERROR

As reflected in Plaintiff's merits brief, the disputed issues that Plaintiff is raising as the grounds for reversal and remand are as follows:

1.    Whether the ALJ considered the correct period when considering the evidence related to Plaintiff's SSI application;

2.    Whether the ALJ properly questioned the VE and whether the ALJ had a duty to develop the record regarding the VE's testimony;

3.    Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony; and

4.    Whether the RFC is supported by substantial evidence.  (ECF No. 9 at 5–18.)

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson*, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## V.    DISCUSSION

### A.    The ALJ Did Not Harmfully Err in Determining the Alleged Onset Date

#### 1.    Parties' Arguments

Plaintiff argues that the ALJ erred by failing to consider the period prior to August 6, 2021, with respect to Plaintiff's Title XVI application for SSI benefits.  (ECF No. 9 at 6–8.)  Plaintiff points to the ALJ's duty to develop a complete medical record for the appropriate time period.  (*Id*. at 6.)  Plaintiff argues that it "remains unresolved" whether Plaintiff intended to amend the alleged onset date for his Title XVI claim to August 6, 2021, or only amend the alleged onset date for his Title II claim for disability benefits.  (*Id.* at 7.)

The Commissioner argues that Plaintiff "plainly amended" his alleged onset date for both his Title II and Title XVI claims at the hearing to August 6, 2021, but even if Plaintiff did not intend to amend his Title XVI onset date, any error is harmless.  (ECF No. 10 at 2–4.)  The Commissioner argues that since Title XVI benefits cannot be paid retroactively, the relevant Title XVI period began on December 27, 2021, the application filing date, which was well after August 6, 2021.  (*Id.* at 3–4.)  The Commissioner further argues that Plaintiff suffered no prejudice as the record contains a complete medical history dating back to 2017, well beyond the typical twelve-month period required to be developed for a Title XVI claim.  (*Id.* at 3–5.)

In response, Plaintiff argues that the records preceding the application filing date are important in determining whether Plaintiff has a disability.  (ECF No. 11 at 2–4.)

///

///

## 2.    Legal Standard

In social security cases, the ALJ has a special duty to fully and fairly develop the record and to ensure that the claimant's interests are considered even when the claimant is represented by counsel.  *See Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).  At a minimum, an ALJ must develop a claimant's "complete medical history for at least the 12 months preceding the month in which [the claimant] file[d] [his] application unless there is a reason to believe that development of an earlier period is necessary."  20 C.F.R. § 416.912(b)(1).

The ALJ's duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001).  When supplementation is necessary, an ALJ may discharge this duty in several ways, including by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.  *Tonapetyan*, 242 F.3d at 1150 (citation omitted).  Ordering a consultative exam is another way an ALJ may fulfill this duty.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001); *see also* 20 C.F.R. § 416.919.  As some courts have persuasively observed, "[t]he ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning.  The standard is one of reasonable good judgment."  *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (citations omitted).

## 3.    ALJ Hearing

During the hearing, the ALJ and Plaintiff's counsel discussed amending the onset date as follows:

> ALJ: All right, thank you.  Counsel, first a few housekeeping issues.  I show that this is a concurrent claim with an [alleged onset date ("AOD")] of January 10, 2021, a DLI [date last insured] in the future of June 30, 2025.  I show the Claimant is age 31 as of AOD and has obtained at least two years of college.

I do show a prior denial at the initial level from 2018 and well, two from 2018 and one in 2019, but well before the current AOD.  And I – but I do show a prior denial at the hearing level from July 29, 2021.  Does that match your, for Title II – does that match your understanding of the case before us?

ATTY: That is my understanding, and certainly I did discuss that prior unfavorable decision with [claimant] and some of the implications.  He would like to amend his alleged onset date to August 6 of 2021, after that last decision and corresponding with the renewed treatment at 7F/Page 2.

ALJ: Okay, thank you.  Just to clarify, August 6, 2021, is that correct?

ATTY: That is correct.

ALJ:  And you also provided a citation.  What was that again?

ATTY: 7F/page 2 is the visit on that date, restarted the Remicade treatment and –

ALJ: Thank you.

ATTY: -- for the ulcerative colitis at that time.

ALJ: Okay.  One moment, okay.

(AR 43–44).

### 4.    Analysis

Although the conversation at the administrative hearing regarding the amended alleged onset date is open to interpretation, the ALJ is allowed to draw reasonable inferences from the record and the Court finds that it was certainly reasonable for the ALJ to conclude that the amendment of the alleged onset date of August 6, 2021, applied to both applications.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038–40 (9th Cir. 2008*)* (an ALJ is allowed to draw reasonable inferences from the record).  Had Plaintiff intended to amend his onset date as to one claim and not both, it would be reasonable to expect that he would have so specified.  However, even if the ALJ erred with respect to the alleged onset date for Plaintiff's Title XVI application, the Court finds that such error was harmless.  *See*

*Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (noting an error is harmless where "it is inconsequential to the ultimate nondisability determination" (internal quotation marks and citation omitted)).

Without support, Plaintiff asserts that "the ALJ failed to consider the period prior to August 6, 2021[,] with respect to the Title XVI application." (ECF 9 at 8.) On the contrary, as required, the ALJ fully developed Plaintiff's complete medical history for at least the twelve months preceding the month in which Plaintiff filed his SSI application. *See* 20 C.F.R. § 416.912(b)(1). Specifically, the ALJ admitted and considered medical records dating back to 2017. (*See* AR 33–34, 42.) The ALJ also asked counsel during the hearing if there was any additional evidence that relates to Plaintiff's disability claims, and counsel responded, "No[,] I believe we are complete." (AR 42.) Regardless, the ALJ kept the record open for twenty-one days after the hearing to give Plaintiff an opportunity to supplement with additional medical records. (AR 70.) Plaintiff does not point to any additional evidence the ALJ failed to consider that would have changed the outcome.[3]

Moreover, in his decision, the ALJ specifically noted that "[r]ecords show the claimant experienced onset of symptoms around 2016, was diagnosed with ulcerative colitis and proctitis in 2017 based on labs and colonoscopy and began treatment with Remicade infusions in 2019 after several other medication trials failed," citing to records from 2017, 2018, and 2020 through 2023. (AR 26.) Thus, the ALJ acknowledged when

---

[3]        As the Commissioner noted, SSI benefits are not payable before the date of application, which in this case was December 27, 2021. *See* 20 C.F.R. §§ 416.203(b), 416.335, 416.501; *Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017); *see also* ECF No. 10 at 3. Therefore, the relevant period for purposes of Plaintiff's SSI claim began on the date he filed his application and the ALJ was not required to consider whether Plaintiff first met the definition of disability prior to that. *See* Social Security Ruling ("SSR") 18-01p, 2018 WL 4945639, at *5 (Oct. 2, 2018); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 999–1000 (9th Cir. 2015) (focusing for purposes of appeal on whether the claimant was disabled between her date of application and the date of decision); *see also Wellington*, 878 F.3d at 872 (SSRs do not have the force of law but are nevertheless binding on ALJs).

symptoms started as well as prior treatment, but then reasonably focused on the time after the amended alleged onset date of August 6, 2021, which was the date Plaintiff renewed treatment. (AR 26, 43.) Accordingly, the Court finds that any error in amending the alleged onset date for Plaintiff's SSI application was harmless.

## B. The ALJ Did Not Err at Step Four

### 1. Parties' Arguments

Plaintiff argues that the ALJ erred in questioning the VE about bathroom breaks by first soliciting an acceptable limitation and then formulating a hypothetical RFC. (ECF No. 9 at 12.) Plaintiff contends that the hypothetical question presented to the VE should be based on the record and not based on previously-obtained answers from the VE. (ECF No. 11 at 5–6.) Plaintiff argues that the ALJ further erred by failing to resolve an inconsistency in the VE's testimony regarding the number of bathroom breaks Plaintiff's past work would actually allow. (*Id.*)

The Commissioner argues in response that there was no inconsistency in the VE's testimony regarding bathroom breaks. (ECF No. 10 at 5–6.) The Commissioner further argues that the ALJ did not err in questioning the VE about bathroom breaks, but rather engaged in permissible evidence gathering. (*Id.*)

### 2. Legal Standard

At step four, a claimant has the burden to prove that he cannot perform his past relevant work either as actually performed or as generally performed in the national economy. *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) (citation omitted); *see also* 20 C.F.R. §§ 404.1520, 404.1560(b), 416.920, 416.960(b). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). To do so, the ALJ must compare the claimant's RFC to the physical and mental demands of the past relevant work. *Id.* at 844–45. If the claimant retains the RFC to perform either "the actual functional demands and job duties of a particular past relevant job" or "the functional demands and job duties of the occupation as generally required by employers

throughout the national economy[,]" then he will be found not disabled. *Id.* (citing SSR 82-61, 1982 WL 31387, at *2 (1982)). This requires specific findings as to the claimant's RFC, the physical and mental demands of the past relevant work, and the relation of the RFC to the past work. *Id.* (citing SSR 82-62, 1982 WL 31386, at *4 (1982)).

In conducting the step-four analysis, the ALJ should "rely primarily" on the Dictionary of Occupational Titles ("DOT") "for information about the requirements of work in the national economy" but may also use VE testimony "to resolve complex vocational issues." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000); *see also* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).

"Hypothetical questions posed to the [VE] must set out *all* the limitations and restrictions of the particular claimant," which are supported by the record. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). A VE's testimony has no evidentiary value if the hypothetical does not reflect all impairments supported by the record. *See Leach v. Kijakazi*, 70 F.4th 1251, 1255 (9th Cir. 2023).

Occupational evidence provided by a VE "generally should be consistent with the occupational information supplied by the DOT." SSR 00-4P, 000 WL 1898704, at *2. However, when a VE provides evidence about the requirements of an occupation, the ALJ "has an affirmative responsibility to ask about any possible conflict" between the VE evidence and information provided in the DOT. *Id.* at *4; *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (holding that an ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT).

When there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a determination or decision about whether the claimant is disabled. SSR 00–4P, 2000 WL 1898704, at *2–4; *see also Massachi*, 486 F.3d at 1153. "[T]he conflict must be 'obvious or apparent' to trigger the ALJ's obligation to inquire further."

*Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (quoting *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016)).

Neither the DOT nor the VE evidence automatically "trumps" when there is a conflict; rather, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than the DOT information. SSR 00–4P, 2000 WL 1898704, at *2–4; *see also Massachi*, 486 F.3d at 1153. The ALJ must "explain the resolution of the conflict irrespective of how the conflict was identified." *Id.* at *4.

3.    <u>Hearing</u>

During the administrative hearing, the ALJ questioned Plaintiff about bathroom breaks, as follows:

ALJ: Okay. Are you currently taking medications?

A: Just the Remicade.

Q: How often do you take the Remicade?

A: Every two months.

. . .

Q: And how long have you been getting it every two months?

A: Maybe three years now.

. . .

Q: Okay. Any side effects when you get the infusion?

A: No, not really.

Q: Does it last the full two months, or does it wear off before the two months are up?

A: No, it wears off after a month. It starts to wear off, and I start to flare.

. . .

Q: Okay. All right. How often are you—when you, when you first have your injection, that first month, how often are you having, when it's working well, how often are you having to go to the bathroom say between 9 and 5 p.m.?

A: Not that much actually, maybe two to three times, so.

Q: Okay. After that month, in the second month 9 to 5, how often do you have to go to the bathroom?

A: It goes like it's 10 times sometimes. It starts to go up, and I start to flare too. It's just, you know, I start getting like blood coming out of my stool.

(AR 58–59, 62–63.)

Subsequently, the ALJ questioned the VE about bathroom breaks, in pertinent part:

Q: . . . All right. How many unexcused or unscheduled absences do employers customarily tolerate from their employees per month in order for the employee to be able to maintain competitive employment?

A: Oh, that will be approximately once per month but not consistently and not more than six times per year.

Q: And what percentage of a workday is an individual tolerated to be off task in addition to regularly scheduled breaks and still be able to maintain competitive employment?

A: Fifteen percent or more of the workday being off task would be considered work preclusive. And for unscheduled breaks beyond traditional breaks, which is a half hour meal break and two 10 to 15 minute breaks, an employer may allow one or two short 5-minute breaks such as a quick bathroom break.

(AR 67.)

The ALJ then proceeded to ask the VE whether a hypothetical person with Plaintiff's assessed RFC (excluding any additional bathroom breaks) could perform any of Plaintiff's past work as actually or generally performed. (AR 68.) The VE responded that such a hypothetical person could perform Plaintiff's past work as a pharmacy technician and salesclerk as actually and generally performed per the DOT. (AR 68.) The VE further

stated that such a hypothetical person could perform Plaintiff's past work as a cashier checker as generally performed per the DOT, but not as actually performed.  (AR 68.)

The ALJ then asked the VE whether the same hypothetical person just discussed could perform any of Plaintiff's past work as actually or generally performed with the additional limitation that the individual would require <u>two</u> extra five-minute bathroom breaks daily in addition to regularly scheduled breaks.  (AR 68–69.)  The VE responded that "those jobs would remain."  (AR 69.)

The ALJ then asked the VE whether the same hypothetical person as first discussed could perform any of Plaintiff's past work as actually or generally performed with the additional limitation that the individual would require <u>four</u> extra five-minute bathroom breaks daily in addition to regularly scheduled breaks.  (AR 69.)  The VE responded that such an individual could not perform any of Plaintiff's past work as actually or generally performed and that such a limitation would be overall "work preclusive."  (AR 69.)

The ALJ then asked the VE whether her testimony was consistent with the DOT and its companion publication the Selected Characteristics of Occupations ("SCO").  (AR 69.) The VE testified that it was consistent with the exception of some issues not addressed in those resources including absenteeism, time off task, and unscheduled breaks.  (AR 69.) For these issues, the VE testified that she relied on her experience and training as a vocational counselor.  (AR 69.)

4.    <u>Analysis</u>

Here, the ALJ's second hypothetical reflected all of Plaintiff's limitations in the RFC, as stated in the ALJ's decision.  As such, the VE's testimony had evidentiary value and could constitute substantial evidence to support the ALJ's findings.  *See Leach*, 70 F.4th at 1255.  Where "an ALJ accurately summarizes a claimant's limitations," courts ordinarily must affirm.  *Id.*

Plaintiff does not dispute that a complete hypothetical was given to the VE.  Rather, Plaintiff argues that the ALJ improperly used the VE's testimony to inform her hypotheticals, *i.e.*, determine the RFC.  (ECF No. 9 at 10–12.)  However, nothing suggests

that the ALJ improperly determined Plaintiff's RFC based on the VE's testimony, rather than on the complete record before the ALJ.  Plaintiff relies on *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017), but *Revels* is distinguishable.  (ECF No. 9 at 11.)  In *Revels*, the ALJ erred by discrediting the claimant's testimony to the extent that it was inconsistent with the ALJ's RFC determination.  *Revels*, 874 F.3d at 666.  The Ninth Circuit found that the ALJ took a "backward approach" to determining the claimant's credibility—first determining the RFC and then rejecting symptom testimony if it did not conform.  *Id.*  The Ninth Circuit concluded that the ALJ offered no clear and convincing reasons for rejecting the claimant's testimony.  *Id.* at 666–68.

Here, in contrast, Plaintiff would ask the Court to draw the conclusion, based only upon the order in which the ALJ asked questions of the VE, that the ALJ molded her RFC to conform to what the VE indicated would be acceptable to an employer.  Not only is the Court unwillingly to reach such a cynical conclusion without evidence, but such a conclusion would be undermined by the detailed explanation provided by the ALJ as to why she concluded that Plaintiff's testimony about needing more breaks from work was overstated and not credible.

Plaintiff further argues that the VE gave inconsistent testimony when stating that "an employer may allow one or two short 5-minute breaks such as a quick bathroom break" beyond traditional breaks in a workday, but then stating that a hypothetical individual requiring two extra five-minute bathroom breaks daily in addition to regularly scheduled breaks could perform Plaintiff's past work as actually or generally performed.  (ECF No. 9 at 12; *see also* AR 67–69.)  The Court finds no inconsistency or apparent conflict requiring further development.  It is important to this analysis to note that the VE was first asked about employers in general, which would reflect the whole of the economy, when she responded that one or two short 5-minute breaks may be allowed.  (AR 67.)  She was later asked specifically about whether a hypothetical employee with Plaintiff's limitations could perform *any of Plaintiff's past work as actually or generally performed* with the additional limitation that the individual would require <u>two</u> extra five-minute bathroom

breaks daily in addition to regularly scheduled breaks. (AR 68–69.) The VE responded that "those jobs would remain." (AR 69.) This response, specific to Plaintiff's past work, including as generally performed, was based on the VE's experience and training as a vocational counselor and was not inconsistent with her earlier response about employers more generally. (*Id*.)

Given the foregoing, the Court finds that the ALJ did not err in questioning the VE and developing her testimony.

### C.    The ALJ Did Not Harmfully Err in Assessing Plaintiff's Symptom Testimony

#### 1.    Parties' Arguments

Plaintiff argues that the ALJ erred in evaluating Plaintiff's subjective symptom testimony. (ECF No. 9 at 13–18.) Specifically, Plaintiff argues that the reasons given by the ALJ are not supported by substantial evidence. (*Id*.) In response, the Commissioner argues that the ALJ did not err and reasonably determined that the record supported greater functioning than Plaintiff alleged. (ECF No. 10 at 9–11.)

#### 2.    Legal Standard

In deciding whether to accept a claimant's subjective symptom testimony, the ALJ must perform a two-step analysis. *Smolen*, 80 F.3d at 1281. First, the ALJ must assess "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter*, 504 F.3d at 1036). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*,

759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."); *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014) (finding error where the ALJ "never connected the medical record" to the claimant's testimony and did not make "a specific finding linking a lack of medical records to [the claimant's] testimony").

The ALJ is responsible for "determin[ing] credibility, resolv[ing] conflicts in the testimony, and resolv[ing] ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g) (directing that the Commissioner's "findings . . . as to any fact, if supported by substantial evidence, shall be conclusive"). In assessing a claimant's credibility, the ALJ may consider, *inter alia*, (1) inconsistencies in the claimant's testimony or between her testimony and her conduct; (2) the claimant's daily living activities; (3) the claimant's work record; and (4) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002)[4]; *see also Ghanim*, 763 F.3d at 1163 (listing factors).

If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to engage in second-guessing. *See Thomas*,

---

[4]    The Court in *Thomas* also included the claimant's reputation for truthfulness as a consideration, but the SSA has since clarified that "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); *accord Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017).

278 F.3d at 959 (citation omitted); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). However, "[i]f the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] [its] conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1103). Because reviewing courts "cannot engage in such substitution or speculation, such error will usually not be harmless." *Id.* But the ALJ's reliance on other possibly erroneous credibility findings is harmless if the ALJ's conclusion on credibility is supported by other substantial evidence. *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162–63 (9th Cir. 2008).

### 3. ALJ's Decision

The ALJ summarized Plaintiff's hearing testimony as follows:

The claimant alleges disability due to ulcerative colitis (see Exhibit B2E). At the hearing, the claimant testified he cannot work because, with his condition worsening, he experiences rapid dehydration and dizziness with any exertion, difficulty eating, and excessive restroom use. He referred to a January 2023 encounter at Tri City Hospital for emergency breakthrough symptoms. With respect to his treatment, he testified he receives a Remicade infusion every two months that takes four hours to administer at the treatment facility. He denied side-effects but explained the infusion's effectiveness starts to wear off after about one month, leading to flares. In terms of his exertional abilities, the claimant explained that changes in position between sitting and standing sometimes provoke stomach discomfort and a need to use the restroom; he testified he would be unable to push shopping carts for as much as an hour at a time. In a typical day, he stated, he lies down to read, eats, takes short walks or light jogs of five to ten minutes at a time, and helps with chores such as taking out the trash, cleaning in the backyard and the kitchen, laundry, and dishwashing. He testified he sees to his own hygiene. He stated his parents cook for the household. With respect to his eating, the claimant testified he uses nutrition drinks prescribed by his doctor, takes vitamins, and sometimes skips eating solid foods if he knows he has to go out in public. Focusing on normal daytime hours, the claimant estimated he takes two or three bathroom

17

breaks for the first month after his infusion, then he uses the restroom as much as ten times a day and experiences blood in his stool until his next infusion. (AR 26.)

After "careful consideration of the evidence," the ALJ found that Plaintiff's medically determinable impairments of ulcerative colitis and proctitis could reasonably be expected to cause the alleged symptoms. (AR 24, 26.) However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record. (AR 26.) Specifically, the ALJ rejected Plaintiff's testimony regarding the severity of his symptoms because the (1) the medical and other evidence is not entirely consistent with the asserted extent of functional loss, and (2) Plaintiff is mostly capable of functioning independently in his daily routine. (AR 27.)

4.   Analysis

As there is no evidence of malingering in the record, the ALJ was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony regarding the severity of his symptoms. *See Treichler*, 775 F.3d at 1102. The Court will address each reason given by the ALJ below.

a.   *Inconsistency with Medical Record*

First, the ALJ discounted Plaintiff's testimony regarding the severity of his symptoms by pointing to inconsistencies with the medical and other evidence of record. (AR 27.) Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective symptom testimony. *See Smartt v. Kijakazi*, 53 F.4th 489, 497–99 (9th Cir. 2022); *Carmickle*, 533 F.3d at 1161.

Here, the ALJ noted that Plaintiff's "flares are relatively rare and somewhat less debilitating than he described in his testimony." (AR 27.) The ALJ pointed to treatment notes from Plaintiff's gastroenterology providers and an oncology office where Plaintiff has received infusions that depict Plaintiff's ulcerative colitis as generally well controlled on Remicade, with Plaintiff himself reporting his ulcerative colitis was "under control" as

18

of December 2022.  (AR 27 (citing Exs. B7F at 6–7, B8F at 3–4).)[5]  The ALJ further noted that, if she focused on the period after the amended alleged onset date, Plaintiff had five flare ups that are documented in health records (August 2021, September 2021, February 2022, April 2022, October 2022), with three of them specifically associated with Plaintiff having lost access to or missed medications.  (AR 27 (citing Exs. B6F at 1–5, B7F at 2–3, B8F at 3–6).)  The ALJ found this "[s]omewhat contrasting" with Plaintiff's testimony implying he routinely experiences flares about four weeks after an infusion, when most of the documented flare-ups occurred when Plaintiff was due or past due for his next treatment.  (AR 27.)

The ALJ further noted that although Plaintiff testified that he typically has ten bowel movements a day during a flare, "the only [treatment] note particularly describing the claimant's symptoms during an acute exacerbation—rather than simply indicating a 'flare' was occurring—indicates he had been making between five and eight restroom trips in a day."  (AR 27 (citing Ex. B8F at 5–6)[6].)[7]  The ALJ further noted that records from Tri City Hospital do not include any encounters for digestive symptoms or dehydration, such as the

---

[5]  On October 7, 2022, Plaintiff's treatment note with Edward C. Paredez, M.D., states that Plaintiff is currently in a flare, which started two days ago when he was due for his infusion.  (AR 778.)  The note also states that Plaintiff has done well on medication "but tends to flare if he misses injections."  (Id.)  On December 6, 2022, Plaintiff's treatment note with Manpreet Kaur PA-C states: "[Plaintiff] currently is on Remicade infusions every two months.  He reports tolerating [R]emicade well with no new side effects.  He states his ulcerative colitis is under control."  (AR 763.)

[6]  The Court notes that this treatment note indicates that Plaintiff's Remicade infusion had been delayed for three weeks due to insurance delays prior to his flare.  (AR 780.)

[7]  Treatment notes indicate that in August 2018, Plaintiff had three bowel movements per day, and three to five bowel movements per day in early 2019.  (AR 567, 669, 689.) Treatment notes further indicate that Plaintiff started Remicade in May 2019 and his symptoms began to improve with decreased abdominal pain and a decrease in frequency of stools in the latter half of 2019.  (AR 715.)  By September 2020, treatment notes indicate that Plaintiff's stool frequency had decreased to one to two per day.  (AR 692.)

January 2023 visit described by Plaintiff in his hearing testimony. (AR 28 (citing Ex. B15F).) Without any such medical records from Tri City Hospital, the ALJ noted that there is no documentation in the medical evidence that Plaintiff has required any heightened level of care (*e.g.*, emergency medical attention, hospitalization, blood transfusion, catheterization, or surgery), even during ulcerative colitis exacerbations. (AR 27.)

Plaintiff disputes the ALJ's contention that Plaintiff has not required emergency medical care, pointing to a brief notation in the medical record indicating Plaintiff "was seen in the emergency room" in May 2019, presumably for his symptoms. (ECF No. 9 at 17 (citing AR 689).) Plaintiff did not, however, provide any of these hospital records.[8] The emergency room visit also predated both the original and amended alleged onset date by well over a year. (*See* AR 43, 372, 378.) Plaintiff also cites multiple treatment notes referencing his loose and/or bloody stools and abdominal cramps indicating they are consistent with his testimony. (ECF No. 9 at 17–18.) However, these notes do not dispute or contradict any reason given by the ALJ for rejecting the severity of Plaintiff's symptom testimony.

Lastly, the ALJ noted that the last colonoscopy report in the record was from October 2019, nearly two years before the amended alleged onset date, making it the most recent medical evidence demonstrating ulceration.[9] (AR 27, 921)

Based on the foregoing, the Court finds that inconsistency with the medical record was a specific, clear, and convincing reason, supported by substantial evidence in the

---

[8]    The Court notes that the ALJ kept the record open for twenty-one days to allow for supplementation of the record generally and specifically with respect to Plaintiff's claimed January 2023 hospital visit. (AR 57–58, 70.)

[9]    An ALJ may not discredit a claimant's testimony on the severity of the symptoms merely because they are unsupported by objective medical evidence. *Reddick*, 157 F.3d at 722; *Bunnell v. Sullivan*, 947 F.2d 341, 343, 345, (9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). However, an ALJ may consider the lack of objective medical evidence corroborating a claimant's subjective testimony as a factor in his credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

record, for rejecting Plaintiff's testimony regarding the severity of his symptoms. *See Treichler*, 775 F.3d at 1102.

### b.    *Daily Activities*

Next, the ALJ discounted Plaintiff's testimony regarding the severity of his symptoms by pointing to his daily activities. (AR 27–28.) "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1165; *see also Revels*, 874 F.3d at 667 ("[I]nconsistent daily activities may provide a justification for rejecting symptom testimony[.]"); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (stating that a contradiction between a claimant's daily activities and his or her testimony is a ground for forming the basis of an adverse credibility determination). In other words, a court may consider inconsistencies between a claimant's words and her actions. *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *see also Reddick*, 157 F.3d at 722 ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."). However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant "does not need to be utterly incapacitated in order to be disabled." *Id.* (internal quotation marks and citation omitted).

Daily activities may also "be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603). To meet this standard, the ALJ "must make 'specific findings relating to [the daily] activities' and their transferability [to a work setting] to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch*, 400 F.3d at 681).

///

21

Here, the ALJ cited Plaintiff's testimony that he is mostly capable of functioning independently in his daily routine.  (AR 27.)  The ALJ highlighted Plaintiff's testimony that he is capable of light household chores, light exercise, and personal care, despite his symptoms and treatments.  (AR 27.)  The ALJ contended that these activities support some intact work-related abilities.  (AR 27.)

Plaintiff argues that the ALJ failed to either explain the inconsistency between Plaintiff's daily activities and his statements or connect his statements to a work setting. (ECF No. 9 at 18.)  The Court agrees.  The fact that Plaintiff can engage in short bursts of activity does not in itself contradict his testimony that he frequently needs to use the restroom or indicate a certain consistent level of work ability.  Moreover, the ALJ fails to acknowledge that at home, Plaintiff has unrestricted access to his restroom, whereas at work, that access is limited in frequency and duration.

For the foregoing reasons, the Court finds that evidence of Plaintiff's daily activities is not a specific, clear, and convincing reason for rejecting Plaintiff's testimony regarding the severity of his symptoms.  *See Treichler*, 775 F.3d at 1102.

### 5.    Conclusion

Overall, the Court finds that the ALJ's credibility determination is supported by substantial evidence in the record.  Any error with respect to another reason articulated by the ALJ is therefore harmless.  *See Carmickle*, 533 F.3d at 1162 ("So long as there remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion, such is deemed harmless and does not warrant reversal." (internal quotation marks and citation omitted)); *Batson*, 359 F.3d at 1197 (finding that although the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record).

///

**D.    Substantial Evidence Supports the RFC**

1.    <u>Parties' Arguments</u>

Plaintiff argues that the ALJ's RFC limitation to two extra five-minute bathroom breaks daily, in addition to regularly scheduled breaks, was arbitrary.  (ECF No. 9 at 10.) Plaintiff further argues that the ALJ failed to "show her work" when formulating the RFC. (*Id.*)  Plaintiff contends that the record supports greater limitations.  (*Id.*)  In response, the Commissioner argues that the ALJ distilled the record into a concise RFC that is supported by substantial evidence.  (ECF No. 10 at 7–8.)

2.    <u>Legal Standard</u>

A claimant's RFC "is the most [a claimant] can do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) ("The RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." (citation omitted)).  The ALJ is "responsible for assessing [the RFC]." 20 C.F.R. §§ 404.1546(c), 416.946(c).  Specifically, it is an ALJ's responsibility to translate medical opinions into concrete, functional limitations.  *See Rounds*, 807 F.3d at 1006 ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").  The ALJ must determine a claimant's RFC "based on all of the relevant medical and other evidence," and will consider "any statements about what [the claimant] can still do that have been provided by medical sources" and "descriptions and observations of [the claimant's] limitations" provided by the claimant and other non-medical sources.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Laborin*, 867 F.3d at 1153.

The ALJ need only consider those limitations supported by the record and need not take into account properly rejected evidence or subjective complaints. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  A district court must uphold an ALJ's

23

RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision.  *Id.*

### 3.    Analysis

Here, Plaintiff is only challenging the part of the RFC that states "he would require two extra five-minute bathroom breaks daily, in addition to regularly scheduled breaks." (AR 25.)  During the hearing, the VE testified that regularly scheduled breaks include a 30-minute meal break and two 10-to-15-minute breaks.  (AR 67.)  Therefore, the ALJ included in Plaintiff's RFC accommodation for at least five bathroom breaks of varying lengths during a regular workday.

Plaintiff argues that this determination was arbitrary—both the number of breaks and the length of breaks—and provided without explanation.  (ECF No. 9 at 9–10.) However, as discussed above when addressing Plaintiff's symptom testimony, the ALJ reasonably determined that Plaintiff's ulcerative colitis was largely under control by December 2022, the medical record was not entirely consistent with Plaintiff's claimed need for ten bathroom breaks a day during a flare up, and Plaintiff mostly experienced flare ups when he was due or past due for his next Remicade treatment.  (AR 27.)  The ALJ also noted that the medical record only indicated a need for five to eight bathroom breaks in a day (not limited to the workday) on one occasion, and this was when Plaintiff was three weeks overdue for his treatment.  (AR 27, 780.)

The ALJ is responsible for translating medical opinions and testimony into concrete, functional limitations, and the ALJ did so here.  The State Agency medical consultants, who provided the only opinion evidence of record, did not opine that Plaintiff needed *any* additional breaks beyond regularly scheduled breaks.  (*See* Exs. B2A, B3A, B6A, B7A.) However, the ALJ explicitly found those findings unpersuasive because the lack of restroom-break allowance was "inconsistent with the balance of the evidence as it d[id] not account for the nature and chronicity of [Plaintiff's] impairments and the documented instances of exacerbation during the period at issue."  (AR 28.)  The ALJ reviewed the record and determined that Plaintiff's impairments could be accommodated by five

bathroom breaks in a workday. This determination is supported by substantial evidence. Although Plaintiff disagrees, Plaintiff's own review of the medical record indicates that Plaintiff's impairments could be accommodated with five bathroom breaks in a workday. (*See* ECF No. 9 at 17–18 (listing Plaintiff's flare ups which involved no more than five loose stools in a day, except for April 2022 when Plaintiff was overdue for his treatment).)

Lastly, Plaintiff argues that his ability to work would also be impacted by abdominal pain, which would take him off task and away from his workstation, and by his Remicade infusions, which take approximately two hours[10] to administer every eight weeks. (ECF No. 9 at 10.) Plaintiff did not explicitly testify that his abdominal pain precluded him from working. However, the medical record indicates that abdominal pain accompanies a flare up and loose and bloody stools. As discussed above, the ALJ's assessed RFC reasonably incorporated Plaintiff's allegations of debilitating limitations from flare ups.

Plaintiff also did not substantiate or provide any reasons why his Remicade infusions would have to be scheduled during work hours or why approximately six infusions per year would substantially impact his ability to work. (*Cf.* AR 67 (VE testimony that the upper limit of customary tolerance for *unexcused or unscheduled* absences from work is six times per year).) Plaintiff is "ultimately responsible for providing the evidence to be used in making the RFC finding." *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006); *see* 20 C.F.R. §§ 404.1512(a), 404.1545(a)(3). Plaintiff has not demonstrated that the frequency, scheduling, or duration of his infusions would hinder his ability to work. *Compare Mance v. Kijakazi*, No. 22-35697, 2023 WL 5500429, at *1 (9th Cir. Aug. 25, 2023) (finding the ALJ did not err by not evaluating the frequency of claimant's medical appointments where she provided no evidence that the frequency, scheduling, or duration of her medical appointments inhibited her ability to work on a regular and continuing basis), *with Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012) (finding remand appropriate where medical providers opined that claimant "would likely

---

[10]    Plaintiff testified the infusions take approximately four hours. (AR 58.)

miss multiple days [of work] each month" and the identified jobs would not tolerate such absences).

Given the foregoing, the Court finds that the ALJ did not err in assessing the RFC, which is supported by substantial evidence in the record.

## VI.    CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the Court **RECOMMENDS** that Plaintiff's merits brief be **DENIED**, and that judgment be entered affirming the decision of the Commissioner.

Any party having objections to the Court's proposed findings and recommendations shall file specific written objections within **fourteen (14) days** after being served with a copy of this Report and Recommendation.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C).    The objections should be captioned "Objections to Report and Recommendation."  A party may respond to the other party's objections within **fourteen (14) days** after being served with a copy of the objections.  *See id.*

**IT IS SO ORDERED.**

Dated:  January 15, 2025

Hon. Jill L. Burkhardt
United States Magistrate Judge

24-cv-00566-AGS-JLB